{¶ 35} With due respect to both the majority and the trial court, I must dissent for I believe this matter is clearly being "over-thought." In a well-written thirty-three-page opinion, I believe the trial court has lost sight of the forest while examining the individual trees.
 {¶ 36} The core issue to be decided by this court is found at paragraph forty-seven of the trial court's opinion, which states:
 {¶ 37} "The means adopted by Defendant City were not suitable to the end in view; were not impartial in operation; were unduly oppressive upon individuals, including Plaintiff; did not have a real and substantial relation to their purpose; and interfered with private rights beyond the necessities of the situation."
 {¶ 38} I must respectfully disagree based upon the facts if this case. And what are those relevant facts? A parent went into a locker room full of six to eight-year-old hockey players who had just lost an away game. The parent then proceeded, in front of the children, to inform the coach that he was "gonna kick [his] ass" when they returned to Mentor. Curiously, the trial court found this language not to constitute a threat, but characterized it as an invitation to fight later. I would suggest this is a distinction without a difference. It is the threatening behavior, not the outcome of physical violence, which is at the core of this matter. Based upon this behavior the City of Mentor conducted an informal inquiry, and then banned the parent from its ice arena for five years.
 {¶ 39} Although the incident occurred in Garfield Heights, rather than Mentor, there was a clear nexus to the City of Mentor Civic Center. The incident occurred in the locker room of a Mentor youth hockey team, which plays its home games at the Mentor Civic Center. Defendant city of Mentor clearly has the right to regulate the conduct of athletic teams that use its facilities.
 {¶ 40} Clearly, no one would claim a due process deprivation if they were prohibited from walking on a basketball floor with golf spikes. Would someone who maliciously announced a bomb-scare at Gund Arena have the right to buy a ticket to the next Cleveland Cavalier's game? Of course not. Why, therefore, does appellee feel he has the right to threaten a coach in a locker room in front of children? I do not get it. In a civilized society, someone must make the rules.
 {¶ 41} Here is the rule that the city of Mentor has announced. If you go into a children's locker room and threaten the coach with physical violence, you lose your right to be there. It really is that simple.
 {¶ 42} The city of Mentor, acting through its agent declared that the subject conduct warranted a five-year "penalty" for the offending parent. Pursuant to R.C. 2506.01 that is a "decision" from a "political subdivision of the state" which could have and should have been appealed to the common pleas court. Had the court recognized this administrative appeal for what it was, the court then, pursuant to R.C. 2506.04 could "*** affirm, reverse, vacate, or modify the order ***." This is a matter where a taxpayer would like to have the court review the actions of a governmental body; nothing more, nothing less.
 {¶ 43} It would appear to me that the trial court's lengthy analysis of due process and property rights is at best misplaced. The same due process standards do not apply to all instances where an individual's rights are terminated. Rather, the following test is to be used to determine the amount of due process protection a particular situation warrants: (1) the individual's interest that will be affected by the action; (2) the risk of error that could arise without providing additional procedural safeguards; and (3) the cost to the government agency to provide the additional procedural safeguards.[1]
 {¶ 44} There is a wide range of adjudicatory decisions made throughout this country on a daily basis which warrant a varying degree of due process consideration. They range from a city employee requiring that an individual spit out their chewing gum before playing basketball at a city facility; to a tenured government employee losing their job;[2]
to someone's public assistance benefits being terminated;[3] and to a person being sent to prison. Obviously, the same procedural safeguards are not required for each of these situations.
 {¶ 45} The cCity of Mentor invited the whole world, including appellee, to provide statements regarding what happened in that locker room. And the most important statement came from the offending parent, when he freely admitted he made his threat in Garfield Heights — for the fight to happen in Mentor — so that he would not run the risk of ending up in jail in Garfield Heights. By submitting this statement, appellee was given an opportunity to be heard. In addition, the fact that he gave a statement demonstrates that he had notice of the investigation.
 {¶ 46} The procedural safeguards employed by the city were more than adequate. Appellee was not going to jail. His children were not being taken away from him. He was not being removed from his home. Applying the Mathews v. Eldridge test, the value of appellee's right to enter the municipal building was minimal. There was little risk of error by the process involved, because appellee was given the opportunity to present his side of the story and, in fact, admitted that he was involved in the locker room incident. Finally, the cost to the city would be excessive if a full, trial-like evidentiary hearing was required every time the city attempted to enforce its rules. Due process is defined as a right to be heard in a meaningful fashion. That's what happened here.
 {¶ 47} The cCity of Mentor acted properly in banning this parent from their facility. What were they to do? Wait until the fisticuffs erupted in the locker room? If the trial court's ruling is upheld, a new question will arise. When a lifeguard in Mentor sees one child "dunking" another child in the pool will they be able to put them in "time-out?" Or would that require a hearing with the right to confront witnesses. Then an evidentiary hearing would ensue, poolside, to determine whether the offending lifeguard had somehow ventured into the forbidden "quasi-judicial" arena when they put the youngster in "time-out." As I said, in a civilized society, someone has to make the rules.
 {¶ 48} The trial court got it wrong, and the cCity of Mentor's order should be upheld.
[1] Mathews v. Eldridge (1976), 424 U.S. 319, 335.
[2] See Cleveland Bd. of Education v. Loudermill (1985),470 U.S. 532.
[3] See Goldberg v. Kelley (1970), 397 U.S. 254.